IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES,<br><br>    v.<br><br>BILLY THEODORE POWELL,<br><br>    Defendant. | Case No. 2:11-cr-205 |

**MEMORANDUM OPINION & ORDER**

Before the Court is the defendant's "Renewed Motion for Compassionate Release Pursuant to 18 Title U.S.C. § 3582(c)(1)(A)." ECF No. 46. The motion, filed pro se, argues that the defendant should be released from prison based on "(1) Sentencing Commission recidivism data; (2) First Step Act accrued productive activity credits; and (3) COVID-19 vaccine immunity." ECF No. 46 at 16.

The Court has fully considered the arguments set forth in the defendant's brief and has determined it is not necessary to hold a hearing on the motion. For the reasons stated below, the motion is **DENIED.**

I.     PROCEDURAL HISTORY

The defendant, Billy Theodore Powell, was indicted on December 19, 2011, and charged with two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). ECF No. 13. The defendant pleaded guilty to one count of production of child pornography on February 14, 2012, before the Honorable Henry C. Morgan,

Jr. ECF No. 18. Judge Morgan sentenced the defendant to 180 months imprisonment and supervised release for life. ECF No. 31.

On March 27, 2020, the defendant filed a motion styled as "Emergency Motion to Effect Early Release 18 Title U.S.C. § 3582(c)(1)(A)(i) and (c)(1)(B)." ECF No. 35. On May 11, 2020, Judge Morgan appointed the Federal Public Defender ("FPD") and ordered FPD to file a renewed motion for compassionate release. ECF No. 36. The defendant filed a renewed motion on May 26, 2020 (ECF No. 38), and the government responded in opposition on June 9, 2020 (ECF No. 39). The defendant filed a reply on June 15, 2020. ECF No. 41.

On October 15, 2021, the Honorable Roderick C. Young denied the defendant's motion for compassionate release. ECF Nos. 44 (opinion) and 45 (order). On August 4, 2022, the defendant filed the instant motion for compassionate release. ECF No. 46. This case was reassigned to the Honorable Elizabeth W. Hanes on October 6, 2022, and to this Court on March 17, 2023.

## II.  LEGAL STANDARDS

### A.  Exhaustion

Before the court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant has requested relief from the warden of their facility, the defendant may file a motion with the court as though they had exhausted their administrative remedies. *Id.*; *see*

*also United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that a defendant may satisfy the exhaustion requirement by waiting 30 days from the date of their initial request to file a motion in the district court, even if the warden has already responded to their request).

B.  **Merits**

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." *See United States v. Hargrove*, 30 F.4th 189, 197–98 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence reduction first, then balanced the outcome of that analysis against the sentencing factors in § 3553. *E.g.*, *United States v. Ogun*, No. 4:12cr4, 2023 WL 2207114, at *1 (E.D. Va. Feb. 24, 2023).

3

### i. *Extraordinary and compelling reasons*

The Court may reduce a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195.

The Sentencing Commission has promulgated a policy statement, United States Sentencing Guideline § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). This policy statement was last updated before the First Step Act was signed into law, *i.e.*, when only the Bureau of Prisons could bring compassionate release motions. *Id.* As a result, the Fourth Circuit has held that the policy statement is not binding but can serve as "helpful guidance" when evaluating compassionate release motions filed by prisoners. *Hargrove*, 30 F.4th at 197 (quoting *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021)). The policy statement provides that extraordinary and compelling reasons exist, in the medical/health context, where:

> The defendant is suffering from a terminal illness . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i) and (ii), or where

> The defendant (I) is at least 65 years old; (II) is experiencing a serious deterioration in physical or mental health because of the aging process; and (III) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

4

*Id.* at (B). A "district court's analysis must examine whether the defendant's request for reduction is consistent with the Sentencing Commission's applicable policy statements." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

The Fourth Circuit has stated, in the context of COVID-19, that a defendant must show "that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [their] preexisting medical condition increases [their] risk of experiencing a serious, or even fatal, case of COVID-19." *United States v. Brown*, No. 21-7752, 2023 WL 5257673, at *5 (4th Cir. Aug. 16, 2023) (quoting *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)) (alterations accepted).[1] As the *Brown* court acknowledges, one of the prevailing formulations of this standard in the Fourth Circuit is that the prisoner must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Brown*, 2023 WL 5257673 at *5; *see also, e.g., Hargrove*, 30 F.4th at 196 (affirming a district court order denying relief after applying this standard); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (same).

---

[1] The Fourth Circuit's opinion in *Brown* actually says that a defendant must only "allege" these facts. *Brown*, 2023 WL 5257673 at *5. The Court assumes that the Fourth Circuit means that a defendant must "show" or "demonstrate" with some evidence, beyond merely alleging, that "the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition increases his risk of experiencing a serious, or even fatal, case of COVID-19." *Id.* Allowing defendants to prevail on compassionate release motions based solely on an allegation would dramatically lower the barrier to relief on such motions. There is no indication that the *Brown* court intended that result. For this reason, the Court will apply the standard as articulated by the *Brown* court with the modification that a defendant must "show" the required facts with some amount of evidence sufficient to satisfy the Court that an "extraordinary and compelling reason[]" exists.

### ii.   *Sentencing Factors*

After completing the "extraordinary and compelling reasons" analysis, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Nurani*, No. 2:11cr34-3, 2023 WL 2058649, at *7 (E.D. Va. Feb. 16, 2023). Even if the Court finds "extraordinary and compelling reasons" to reduce a defendant's sentence, the Court may ultimately deny a motion for compassionate release if its analysis of the § 3553(a) factors counsels against release. *Id.* Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [by the Sentencing Commission];

(5) any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

II.    ANALYSIS

    A.    Exhaustion

With respect to the defendant's first motion for compassionate release, Judge Young found—and the government did not dispute—that the defendant met the exhaustion requirement. ECF No. 44 at 8. Although the instant motion raises additional grounds not raised in the defendant's previous motion, the Fourth Circuit explained in *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022), that there is "no reason to limit [a defendant's] motion for compassionate release in the district court to only those grounds for compassionate release . . . identified in [their] request to the BOP." *Id.* at 268. Therefore, the Court finds that the exhaustion requirement has been met.

    B.    Merits

           *i.*    *Extraordinary and compelling reasons*

The defendant argues that three factors warrant a finding of extraordinary and compelling reasons in this case: (1) "Sentencing Commission recidivism data," (2) "First Step Act accrued productive activity credits," and (3) "COVID-19 vaccine immunity." ECF No. 46 at 16. The Court addresses each of these in turn.

The defendant correctly notes that, in general, the statistical risk that a person of his age—65 years old—will recidivate upon being released from prison is relatively low compared to that risk for younger individuals.[2] Other factors, such as criminal

---

[2] United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview*, https://www.ussc.gov/sites/default/files/pdf/research-and-

history, offense type, and education level also play a role.³ The defendant does not have an extensive criminal history and has a college degree. *See* ECF No. 37 at 2, 9.

On these facts, a low risk of recidivism alone is not an extraordinary and compelling reason justifying a sentence reduction. At the time the defendant was sentenced, the sentencing judge knew that the defendant had a college degree and no criminal history. Because the sentencing judge also knew the defendant's age, the judge would have known that the defendant would be his current age at this point in his prison term and would have a correspondingly low risk of recidivating. With all of that in mind, the sentencing judge imposed a sentence of 180 months. Granting the defendant's motion on these grounds would simply be substituting this Court's judgment of the facts for the sentencing court's judgment. *See United States v. Hunter*, 12 F.4th 555, 571 (6th Cir. 2021) ("The extraordinary-and-compelling-reasons requirement in § 3582(c)(1)(A) cannot be met based on a mere difference of opinion regarding the significance of the facts that existed at sentencing.").

The Court acknowledges that the United States Sentencing Commission's policy statement, United States Sentencing Guideline § 1B1.13, provides that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction

---

publications/research-publications/2016/recidivism_overview.pdf (last visited August 11, 2023) ("A federal offender's age at time of release into the community was also closely associated with differences in recidivism rates. Offenders released prior to age 21 had the highest rearrest rate, 67.6 percent, while offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent.").
³ *Supra* note 2.

under this policy statement." U.S.S.G. § 1B1.13 cmt. n. 2. But "U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A)." *Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). However, the Court declines to find that the defendant's low risk of recidivism is an extraordinary and compelling reason that justifies release. *United States v. Crosby*, No. 1:09cr40049, 2023 WL 1927269, at *4 (D. Kan. Feb. 10, 2023) ("[The defendant] has not shown that his rehabilitation efforts and any decreased risk of recidivism are extraordinary and compelling reasons for relief.").

Next, the defendant argues that he has accrued sufficient "productive activity credits" under the First Step Act such that he should be released. But, as the defendant acknowledges, the nature of his offense precludes application of these credits. The defendant was convicted under 18 U.S.C. § 2251(a), which is carved out of the First Step Act's earned credits provision. 18 U.S.C. § 3632(d)(4)(D)(xxxix); *see also Frazer v. Petrucci*, No. 19cv865, 2019 WL 5887302, at *2 (S.D.N.Y. Nov. 8, 2019) ("Because he was convicted under Section 2252A of Title 18 of the United States Code, the petitioner is ineligible for time credits based on evidence-based recidivism reduction programming under the First Step Act.") (citing 18 U.S.C. § 3632(d)(4)(D)(xlii)).

The defendant asserts that the First Step Act's exclusion of certain offenses from earning these credits violates the Fifth Amendment's equal protection clause. ECF No. 46 at 10. The defendant cites the Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620 (1996), for its assertion that "[t]he resulting disqualification of a

9

class of persons from the right to seek specific protection from the law is unprecedented in our jurisprudence . . . A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633.

In essence, the defendant appears to argue that persons convicted of certain offenses—such as, in the case of the defendant, production of child pornography in violation 18 U.S.C. § 2251—are treated differently by the First Step Act's time credit provisions than persons convicted of non-excluded offenses in a way that violates their right to equal protection under the Fifth Amendment. This right demands that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).[4] In general, classifications based on "race, alienage . . . national origin . . . [or] gender . . . call for a heightened standard of review." *Id.* at 440. Absent one of these suspect classifications, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.*

Here, there is a clear rational basis for treating persons who have been convicted of the excluded offenses differently than persons who have been convicted of other offenses. The excluded offenses—including the offense of which the defendant was convicted—are some of the most serious crimes punishable under federal law.

---

[4] *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.").

10

*See, e.g.*, 18 U.S.C. § 3632(d)(4)(D)(xi) (relating to chemical weapons), (xx) (relating to threats against the President), (xxiv) (relating to genocide), (xxxii) (relating to terrorist attacks). The exclusion of this and other offenses from earning additional good time credit is, effectively, a legislative judgment to punish these crimes more severely than others. It is axiomatic that "[t]here is . . . a rational basis for treating the sentence of different types of crimes differently." *Tyson v. Baldwin*, No. 19cv648, 2020 WL 469663, at *2 (S.D. Ill. Jan. 29, 2020). In the case of production of child pornography, that legislative judgment could be based on a number of grounds—the particular obscenity of the offense, the need to protect society, and the need to deter future criminal conduct, among others—any one of which could supply the necessary rational basis. Thus, the defendant's equal protection claim fails.

Third, and finally, the defendant argues that there is evidence that the COVID-19 vaccines are not effective at preventing infection and serious illness. ECF No. 46 at 11–16. Judge Young previously analyzed the defendant's health and medical records, including his vaccination status, and concluded that there was not an extraordinary and compelling reason warranting release. ECF No. 44. The defendant has not brought forth any new, significant evidence that warrants revisiting Judge Young's careful analysis and conclusion. The fact that COVID-19 vaccines are not perfect at preventing infection or serious illness is not an extraordinary and compelling reason that warrants release. The fact remains that the defendant's vaccination against COVID-19 substantially reduces his risk of serious illness and death. *Brown*, 2023 WL 5257673, at *5 (finding that the district court did not abuse

11

its discretion by finding that the defendant's vaccination status "mitigated his particularized susceptibility to COVID-19.").

For the foregoing reasons, whether the defendant's proffered bases for compassionate release are considered separately or in combination, the defendant has failed to demonstrate extraordinary and compelling reasons justifying release.

### ii. *Sentencing Factors*

Having found no extraordinary and compelling reason to modify the defendant's sentence exists, the Court will nonetheless consider whether the factors enumerated in 18 U.S.C. § 3553(a) support issuing relief. *See* 18 U.S.C. § 3582(c)(1)(A).

The "nature and circumstances of the offense" are incredibly serious. The defendant pleaded guilty to production of child pornography in violation of 18 U.S.C. § 2251(a). The offense conduct, as detailed by the Presentence Investigation Report, is disturbing. ECF No. 37 ¶¶ 6–11. The defendant took numerous images of his half-sister's 13-year-old daughter "posed naked and engaging in sexually explicit conduct . . . and other erotic activity." *Id.* ¶¶ 6. At the time the defendant took the images, he was living with his half-sister and the victim. *Id.* ¶ 31. The defendant admitted to being "in love" with the victim and to rubbing the victim's "breasts and vagina on top of her clothing." *Id.* ¶ 8.

Given the "seriousness of the offense," the sentence imposed must be sufficient to "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). The seriousness of

the offense in this case weighs heavily against issuing relief, as does the need to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant."

As for the "history and characteristics of the defendant," the Court notes that the defendant has no criminal history. ECF No. 37 ¶ 20. The Court has additionally reviewed the defendant's background as provided by the Presentence Investigation Report. *Id.* ¶¶ 25–31.

The Court has also considered the "kinds of sentences available" and the applicable sentencing range. The offense to which the defendant pleaded guilty carries a mandatory minimum sentence of 15 years imprisonment and a maximum sentence of 30 years. The defendant's advisory guidelines range was calculated to be 168 to 210 months. ECF No. 37 at 28. The defendant was sentenced by Judge Morgan to 180 months imprisonment—the mandatory minimum—and he is currently scheduled to be released in March 2024.

After weighing the factors enumerated in § 3553(a), the Court finds that a sentence reduction is not warranted.

## III.  CONCLUSION

For the reasons stated above, the defendant's motion for compassionate release (ECF No. 46) is **DENIED.**

The Clerk is **DIRECTED** to forward copies of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____
Jamar K. Walker
United States District Judge

Norfolk, Virginia
August 24, 2023